IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-00807-WYD-BNB

CARMEN CEBULSKI,

    Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

    Defendant.

ORDER

This matter comes before the Court on the Plaintiff's complaint for review of the decision of Defendant as plan administrator of an employee welfare benefits plan under 29 U.S.C. § 1132(a)(1)(B) ("the Plan"). Plaintiff filed her opening brief on July 30, 2010, [ECF No. 19].  Defendant responded on August 31, 2010, [ECF No. 21] and Plaintiff filed her reply on September 14, 2010, [ECF No. 22].  The parties agree that the standard to be applied by the Court is to determine whether the Plan Administrator's decision in denying benefits was arbitrary and capricious.

Plaintiff was employed by the Corrections Corporation of America (CCA) as a Case Manager in one of its prisons.   Defendant Metropolitan Life Insurance Company administered the Plan as the claims fiduciary. After she passed out at home and at work, Plaintiff was diagnosed with neurocardiogenic syncope with vasodepressor reflex, a condition which, the parties agree, could cause her to pass out at any time.  She applied for short term disability benefits which were initially granted by Defendant for the period of

September 9, 2008 to October 3, 2008 (including the Plan's required waiting period). Thereafter, Defendant declined to provide short term disability benefits to Plaintiff.

Plaintiff argues that Defendant's actions were arbitrary and capricious because it overlooked medical evidence, misinterpreted medical evidence and refused to reexamine the actual evidence when the mistakes were brought to its attention.

Defendant argues that the Administrative Record ("Rec.") shows that Plaintiff has no functional limitations that would prevent her from returning to work. It goes on to argue that Plaintiff's primary care treating physician, Dr. Schmucker, and his Physician Assistant, Vernice Bautista agreed with that assessment of Plaintiff. Defendant relies upon p. 119 of the Record which contains a transmittal letter that accompanied a copy of the peer review appraisal of Dr. Hamilton, along with Bautista's apparent notation that she reviewed Dr. Hamilton's report with Dr. Schmucker and they 'agreed with Dr. Hamilton.'[1] It responds to Plaintiff's arguments by arguing that although the independent expert who examined Plaintiff's file made some errors in his report, that does not change the fact that based on the totality of the evidence in the Administrative Record, Plaintiff is not disabled.

Defendant goes into great detail regarding the contents of the Administration Record and the medical reports concerning Plaintiff. It goes on to cite Tenth Circuit cases which hold, for example, that the Administrator's decision merely needs to be grounded on "any reasonable basis." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (citation omitted).

---

[1]Considering that P.A. Bautista was the initial health provider to state that it would be unsafe for Plaintiff to return to her job at the prison (Rec. at 199), this terse notation appears to be of limited usefulness when considering the entire Record.

Defendant also notes that it was Plaintiff's burden to provide satisfactory proof that she met the plan's definition of disability.  As Defendant notes, Plaintiff was required to submit "documentation demonstrating that she was receiving treatment for a sickness or accidental injury, that she was not able to earn more than 80% of her predisability income working as a case worker for *any* employer and could not perform each of the material duties of her job with CCA."  (D's Resp. at p. 14) (emphasis in original).  The language tracks that of the Plan in its definition of disability, as shown below.

There is not much debate about Plaintiff's condition.  After she fainted once at work and once at home within a relatively short period of time, she went to her doctor and was told about her condition.[2]  It is Defendant's position that Plaintiff has no functional impairment and that her disability claim rests on the fact that she works in a prison.

In fact, it is apparent that Plaintiff's claim **must** rest on the position she held and the place where she held it.  Disability is defined in the Plan as follows:

> Disabled or Disability means that, due to Sickness or as a direct result of an accidental injury: You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and You are unable to earn more than 80% of Your Predisability Earnings at Your Own Occupation from any Employer; and [sic] unable to perform each of the material duties of Your Own Occupation. . .
> Own Occupation means the essential functions You regularly perform that provide Your primary source of income.

(Rec. at 21.)

---

[2]The onset of Plaintiff's problem in the summer of 2008 is somewhat murky from the Record.  The report of Dr. Sellers states that Plaintiff started seeing her primary care doctor in July 2008 for dizziness related issues but had a related test on 6/19/08. Rec. at 141.  Defendant's letter denying Plaintiff's appeal refers to the incident at Plaintiff's home (which the parties generally refer to as the first relevant episode) as having occurred on July 29, 2008. Rec. at 115. The earliest medical records that appear in the Record date from September 9, 2008.

Starting at the beginning of this definition, the time period covered by the Administrative Record does not give a long term view of the medical care being provided to Plaintiff.  Nevertheless, it is clear that in the time frame of September through December 2008, (and possibly into the next spring), Plaintiff was regularly undergoing medical testing and modification of medications in an attempt to stabilize her condition.  In fact, it appears that she was put on medication after the first incident in July 2008 and was still on it when the second incident occurred, at work, in September 2008.  Rec. at 143.   Defendant does not dispute that Plaintiff was receiving appropriate care and treatment.   The Peer Review letter relied upon by Defendant concurs with that determination. Rec. at 122 ## 2 and 3.

Moving on to the two remaining factors in the Plan's definition of disability, being unable to earn more than 80% of  predisability earnings at the same occupation from any employer and being unable to perform each of the material duties of her occupation, Defendant seems to have bypassed these specific criteria to move on to the more general position that Plaintiff's condition was under control and she was not disabled.

In support of this position, Defendant has also argued that the condition from which Plaintiff was suffering in September 2008 was no different from the fainting spells that she said she had been suffering from since she was a child, and during the prior eleven years that she had held the same position with the CCA.

I find this argument unpersuasive for several reasons.  The primary one is that Defendant appears to be relying on a statement Plaintiff made to doctors that she had problems with passing out since she was seven years old.  While Plaintiff does appear to have told this both to Dr. Sellers and to Physician Assistant Bautista, neither reference to

the statement, at either page 143 or 196 of the Record respectively, contains any detail other than that Plaintiff says she saw several doctors regarding these incidents, presumably many years ago, but they found nothing wrong with her brain or heart. That piece of information leaves a myriad of questions unanswered: How often has she had these episodes in the last 28 years; when was the last time prior to July 2008 that she had an episode, had she seen any doctors about the problem within, say, the last twenty years etc. etc. Without knowing the answer to these questions, there is no way to know if Plaintiff's two episodes in the summer of 2008 were something new and different or they had been occurring regularly throughout her life. If the latter were true, it seems extremely unlikely that no further mention of it appeared elsewhere in the Record. Consequently it seems that it is inaccurate to say that this is the same problem that Plaintiff had been suffering from throughout most of her childhood and since she began her career with CCA.

The Record contains nothing, other than that single statement, that indicates that Plaintiff suffered any incident of passing out, at home or at work, prior to July 2008. Despite Defendant's emphasis of the fact that the only reason Plaintiff's condition is a problem is because she works at a prison, there is no mention that she had any prior incidents of syncope in the prior eleven years that she worked there. If that is so, it raises the question of what has changed that has made her more susceptible to the problem and if it is likely to continue.

Defendant does not actually argue that Plaintiff is still able to do her job as Case

Manager.[3]  Instead Defendant argues that she is not disabled because there are a limited number of types of work that she could not do with her condition.  Unfortunately for Defendant, case manager in a prison appears to be a job she cannot safely do.

To return to consideration of the Plan's definition of disability, the first provision, regarding treatment appears to have been met. In considering the second requirement, that she be unable to earn more than 80% of her predisability earnings at her occupation from any employer, that factor is unknown although it seems extremely unlikely.  For liability reasons alone, it is hard to believe that any entity responsible for running a prison would allow an individual who may suffer from periodic black outs to work with the prison population as a Case Manager.  In any event, it does not appear that Defendant took this consideration into account when it denied disability benefits.

The final condition for a finding of disability is that the individual be unable to perform each of the material duties of her own occupation.  This is an interesting condition, particularly in light of the fact that the job description for a CCA Case Manager has some thirty-one "essential functions."  Rec. at 155-57.  Assuming that it would be unsafe for Plaintiff to commit to performing any duties which would require her to spend any time alone with one or more prisoners (or operate a motor vehicle or 'remain alert at all times' in case of emergency), that would preclude just over half of the thirty-one functions.[4]  While

---

[3]In light of the dangerous repercussions that could result from her returning to that position and suffering another episode, it seems likely that CCA would not want, or even allow, Plaintiff to return to that position.

[4] Most of the excluded functions could be performed by Plaintiff if she had another staff member present but there is no indication that CCA would allow that.

-6-

that leaves more than a dozen essential functions that Plaintiff could safely perform, there is no indication that her employer would find that sufficient in light of its detailed list of requirements.  It seems wrong to state that an individual can only be compensated as disabled if they can do **none** of the thirty-one functions, when it is likely that the employer would reject him or her as unqualified or inadequate if unable to do just a few.

In sum, I find that Defendant exercised its discretion in this matter in an arbitrary and capricious manner.  Although both the initial decision and decision on appeal (Rec. at 97 and 155 respectively), paid lip service to the Plan's requirements for a finding of disability, neither one included application of either the second or third part of the definition to Plaintiff.  Instead Defendant moved from the first factor to outside the definition in the Plan to argue that because the only job she cannot do is her own, that is not enough to make her disabled.  Because of her medical condition, she cannot be a Case Manager with CCA. Defendant's decision to terminate short-term disability payments to Plaintiff was arbitrary and capricious.

It is therefore ORDERED that Judgement is Granted for Plaintiff on the Administrative Record.

It is further ORDERED that the matter is remanded to the Administrator for an award of benefits.

Dated:  August 15, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge